IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TONY JIN KWAK | ) CIVIL NO. 07-00534 SOM-KSC |
| | ) |
|     Petitioner, | ) FINDINGS AND |
| | ) RECOMMENDATION TO DENY |
|     vs. | ) PETITIONER'S HABEAS CORPUS |
| | ) PETITION |
| CLAYTON FRANK, Acting | ) |
| Director, Department of | ) |
| Public Safety, State of | ) |
| Hawaii, | ) |
| | ) |
|     Respondent. | ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION TO DENY
<u>PETITIONER'S HABEAS CORPUS PETITION</u>

Before the Court, pursuant to a referral under

Local Rule 72.5 of the Local Rules of Practice of the

United States District Court for the District of Hawaii

("Local Rules") and 28 U.S.C. § 636(a), is Petitioner

Tony Jin Kwak's ("Petitioner") Habeas Corpus Petition

under 28 U.S.C. § 2254 ("Petition"), filed October 24,

2007.  On January 28, 2008, Petitioner filed a

Memorandum in Support of the Petition.  On June 19,

2008, Respondent Clayton Frank ("Respondent") filed an

Answer to the Petition.  Petitioner filed a Memorandum

in Response to Respondent's Memorandum in Opposition to

Petitioner's Memorandum in Support of Habeas Corpus

Petition ("Reply") on August 5, 2008.  After careful

consideration of the Petition and the supporting and

opposing memoranda, the Court hereby FINDS and

RECOMMENDS that the Petition be DENIED for the reasons

set forth below.

BACKGROUND

Petitioner seeks federal habeas relief from his

November 1, 2002 state court conviction, by a jury, of

reckless manslaughter in violation of Hawaii Revised

Statutes ("HRS") § 707-702.[1]  The conviction arises out

of an October 6, 2001 incident at Venus Night Club.

Robert Cullen ("Cullen"), a bouncer at the club, died

---

[1]   HRS § 707-702 provides in pertinent part: "(1)
A person commits the offense of manslaughter if: (a)
The person recklessly causes the death of another
person; or (b) The person intentionally causes another
person to commit suicide."  Haw. Rev. Stat. § 707-
702(1).

2

while trying to break up a fight.  Petitioner was alleged to have kicked Cullen in the chest during the scuffle, which resulted in *commotio cordis*, a type of heart failure caused by a blow to the chest.

On October 15, 2001, Petitioner was charged with murder in the second degree.  The case proceeded to trial on April 10, 2002.  At the close of the State's case, the circuit court granted Petitioner's motion for a judgment of acquittal on the murder charge, but not on the included offense of reckless manslaughter.

When addressing jury instructions with counsel, the circuit court Judge noted that he was "inclined to deny all self-defense and defense of third-party instructions because I haven't heard the evidence that way.  There's no testimony by Tony Kwak, and I don't want to confuse the jury."  (Ex. J3 to Answer at 183: 17-20.)  After some discussion on how the court would instruct the jury, Petitioner's trial counsel, Debra Loy ("Ms. Loy"), suggested "justification is not a

3

defense for the death of Robert Cullen under the facts of this case . . . [d]efense of another person is not a defense." (Id. at 185:3-5; 10-11.) During the jury charge, the circuit court instructed the jury that "[d]efense of another person is not a defense to the charge or included offenses in this case." (Ex. K1 to Answer at 20: 7-8.)

On May 3, 2002, the jury returned a verdict convicting Petitioner of manslaughter based on reckless conduct. (Ex. O to Answer at 2, ¶ 4.)

On May 13, 2002, Petitioner, represented by his newly retained attorney Richard Pafundi ("Mr. Pafundi"), filed a motion for new trial alleging newly discovered evidence and ineffective assistance of counsel at trial. (Id. at 3, ¶ 8.) With respect to Petitioner's claim of ineffective assistance of counsel, he specifically charged that Ms. Loy failed to 1) interview and/or call as a witness Mahealani Kaae ("Kaae") and Jason Lee ("Lee") and 2) emphasize and promote the defense theory that Cullen died as a result

4

of an "elbow strike" by Kirk Tanaka.  (Id. at ¶ 9.)  He also took issue with the wording of a "high-publicity" statement drafted by Ms. Loy and read to prospective jurors by the court prior to voir dire, which purportedly withdrew or impaired the "elbow strike" defense.  (Id.)  The court held hearings on August 30, 2002 and September 20, 2002, during which a number of witnesses testified.

On October 4, 2002, the court orally denied the motion.  On October 25, 2002, the court issued a Findings of Fact, Conclusions of Law and Order Denying Motion for New Trial, concluding that a new trial was unwarranted.  (Id. at 20, ¶ 26.)

Of relevance to Petitioner's points of contention here, the circuit court held that: 1) based on Ms. Loy's testimony and established state case law, her decision not to interview or call Kaae as a witness was "objectively reasonable, given the circumstances, and even more so when the court considers Kaae's testimony at the hearing of this

motion and the court's negative assessment of her

credibility."  (<u>Id.</u> at 16, ¶ 9.)

2)

>           While the better practice might have been
> for Loy to interview Kaae regardless of
> her misgivings, this court declines to
> rule, on the facts of this case, that Loy
> was *per se* ineffective as KWAK's trial
> counsel for failing to interview Kaae when
> Loy was aware, no matter what Kaae might
> have said in a pretrial interview, of the
> negative impact that her previous lie to
> the police would have had on the jury.
> The court concludes that Loy used her
> informed judgment to rule out use of Kaae
> as a witness based solely on Loy's review
> of Kaae's statements to the police and
> Loy's implicit calculus, using her jury
> trial training experience, that Kaae as a
> witness would be more of a liability for
> KWAK than an asset.  <u>See</u> <u>State v. Richie</u>,
> 88 Hawai'i 19, 29, 960 P.2d 1227, 1247
> (Hawai'i 1998) (the calling of witnesses
> is a strategic decision that is generally
> left to defense counsel).

(<u>Id.</u> at 17, ¶ 12.)

3) Ms. Loy's decision not to interview or call Lee as a

witness was tactical and was not ineffective.  "Lee's

testimony would have been, based upon his testimony on

this motion, cumulative and not exculpatory.  Loy's

failure to interview Lee or call him to testify did not

6

withdraw or impair a potentially meritorious defense."

(<u>Id.</u> at 17-18, ¶¶ 13-14.)

4) The elbow strike theory was the subject of trial

preparation by Ms. Loy.  Further,

> [t]he theory that someone else, maybe Kirk
> Tanaka, but in any event not KWAK, struck
> the blow that caused Cullen's heart to
> stop beating was alluded to, advocated and
> argued by Loy in her closing arguments to
> the jury. . . . The fact that the 'Kirk-
> Tanaka-did-it' theory was not born out by
> the evidence, and ultimately did not
> persuade the jury, in no way means that it
> was not pursued by Loy as far and as
> vigorously as the evidence permitted.
> There was no such withdrawal or impairment
> of this defense, as KWAK now claims, and
> accordingly, no ineffectiveness on the
> part of Loy.

(<u>Id.</u> at 18-19; ¶¶ 16-20.)

5) "Taken as a whole, the court concludes that defense

counsel Loy did a competent job in trying the instant

case."  (<u>Id.</u> at 20, ¶ 25.)

Petitioner appealed his conviction to the

Intermediate Court of Appeals, State of Hawaii ("ICA").

On direct appeal, Petitioner argued that 1) the circuit

court erred in explaining to the jury the justification

defense of defense of others but instructing the jury that the defense of others was not a defense at trial; 2) the circuit court improperly denied his motion for a new trial, wherein he argued that Ms. Loy rendered ineffective assistance of counsel by failing to investigate, interview, or call certain lay and expert witnesses; 3) the circuit court plainly erred during jury selection when it read a pretrial publicity statement drafted by Ms. Loy to the jury pool; 4) the circuit court's jury instructions on the offense of reckless manslaughter were prejudicially erroneous; and 5) the evidence at trial was insufficient to prove that he consciously disregarded a substantial and unjustifiable risk that his conduct would induce *commotio cordis*, thereby causing death.  (<u>See</u> Ex. P to Answer, <u>State v. Kwak</u>, 111 Hawai'i 123, 2006 WL 2130906, *1 (Hawai'i Ct. App. Aug. 1, 2006) ("ICA Opinion").)

On August 1, 2006, the ICA affirmed the conviction.  Bearing relevance to the instant Petition,

8

the ICA determined that the jury instruction was

proper.  Specifically, the ICA held that

> [t]here was not a scintilla of evidence
> adduced at trial to support the defense of
> the defense of others.  Remarks of counsel
> are not evidence. . . . Hence, the circuit
> court's instructions were neither
> incorrect nor an impermissible comment on
> the evidence.  Furthermore, the
> instructions did not confuse the jury;
> rather, the instructions told the jury,
> clearly and correctly, exactly what not to
> do.

(Id. at 1.)  The ICA further held that the circuit

court did not commit a clear abuse of discretion in

denying Petitioner's motion for a new trial.  (See id.

at 2.) ("Although hindsight through rose-colored

glasses may appear to be 20/20, '[s]pecific actions or

omissions alleged to be error but which had an obvious

tactical basis for benefitting the defendant's case' -

and that is the case here - 'will not be subject to

further scrutiny.'").

Petitioner subsequently filed an Application

for Writ of Certiorari with the Hawaii Supreme Court.

On November 6, 2006, the Hawaii Supreme Court rejected

Petitioner's Application.  Petitioner did not file a

petition for certiorari in the United States Supreme

Court.

On October 24, 2007, Petitioner filed the

instant Petition.  As grounds for setting aside his

conviction, Petitioner argues that 1) Ms. Loy rendered

ineffective assistance of counsel in violation of the

Sixth Amendment for failing to investigate, interview,

or call certain lay and expert witnesses, including an

individual who saw another person commit the crime and

2) the trial court violated his Sixth Amendment right

to present a defense when it precluded him from arguing

inconsistent defenses and failed to instruct the jury

with respect to the defenses.

DISCUSSION

A.   <u>Exhaustion</u>

Before a state petitioner may bring a habeas

petition to federal court, all of the claims raised

must be exhausted in the state courts.  28 U.S.C.

§ 2254(b)(1);[2] <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).  To do so, a petitioner must present his claims to the highest state court, to give that court a fair opportunity to rule on the merits of each and every issue sought to be raised in the federal court.  <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 839-40 (1999); <u>Granberry v. Greer</u>, 481 U.S. 129, 133-34 (1987); <u>Galvan v. Alaska Dep't of Corr.</u>, 397 F.3d 1198, 1201-02 (9th Cir. 2005).  A petitioner may present his claims either on direct appeal or in state collateral proceedings. <u>See</u> <u>Turner v. Compoy</u>, 827 F.2d 526, 528 (9th Cir.

---

[2] An application for a writ of habeas corpus shall not be granted unless it appears that:

> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

1987).

To fully exhaust federal claims in the state court, petitioners must alert, or "fairly present" their claims as federal as well as state claims. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365-66 (1995)); Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005); Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), as modified by 247 F.3d 904 (9th Cir. 2001).  This "give[s] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[,]" in the first instance.  Duncan, 513 U.S. at 365.

To fairly present a claim, a petitioner must make its federal basis explicit, either by referring to specific provisions of the federal constitution or statutes, or by citing to federal case law.  Lyons, 232 F.3d at 668, 670 (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the

12

specificity and explicitness required to present a federal claim).  This level of explicitness is required even if the federal basis of a claim is "self-evident." Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999). "[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003); see also Lyons, 232 F.3d at 670 n.3 (noting that a third possibility for exhausting state remedies besides referencing specific provisions of federal constitution or statutes or cite to federal case law is to cite pertinent state case law explicitly applying federal law).

It is not enough to make a general appeal to a constitutional guarantee such as "due process" or "equal protection." Gray v. Netherland, 518 U.S. 152, 163 (1996); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" is insufficient to present federal claim); see also

13

Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999)
("The mere similarity between a claim of state and
federal error is insufficient to establish
exhaustion.").  Exhaustion demands more than a citation
to a general constitutional provision, "detached from
any articulation of the underlying federal legal
theory."  Castillo v. McFadden, 399 F.3d 993, 1003 (9th
Cir. 2005).

   If available state remedies have not been
exhausted as to all claims, the district court must
dismiss the petition.  See Rose v. Lundy, 455 U.S. 509,
510 (1982); Guizar v. Estelle, 843 F.2d 371, 372 (9th
Cir. 1988).  A district court may raise a failure to
exhaust *sua sponte*.  Stone v. San Francisco, 968 F.2d
850, 856 (9th Cir. 1992).

   1.   Jury Instruction Claim is Not Exhausted

      Petitioner claims that by erroneously failing
to instruct the jury on the defense of others defense,
the trial court violated his due process right to a
fair trial, as protected by the Fourteenth Amendment to

14

the United States Constitution.  Petitioner contends
that he exhausted this federal claim.  However, the
Court finds that Petitioner did not fairly present this
as a federal claim as well as state law claim.  A
review of Petitioner's Amended Opening Brief reveals
that he failed to assert any violation of federal law
and did not refer to specific provisions of the federal
constitution or statutes, nor cite to federal case law.

Petitioner provided the following standard of
review:  "whether, when read and considered as a whole,
the instructions given are prejudicially insufficient,
erroneous, inconsistent or misleading.  State v.
Sawyer, 88 Hawai'i 325, 330, 966 P.2d 673 (1998)."
(Ex. A1 to Answer at 32.)  Additionally, Petitioner
merely argued that the trial judge erred by denying the
request for justification instructions and directing
the jury not to consider the defense of others.  At no
point in his Opening Brief did Petitioner even suggest
or allude to the fact that the trial judge violated his
federal constitutional rights.  Indeed, Petitioner

15

relied solely on Hawaii state cases for support and did not argue that the trial court's error amounted to a due process violation or deprived him of a right to a fair trial pursuant to the Fourteenth Amendment, as he now avers.  Neither did these Hawaii state cases analyze federal constitutionals issues relevant to Petitioner's claim; the courts therein applied Hawaii law and standards.  As such, although Petitioner presented a failure to instruct the jury claim on direct appeal, it is not fully exhausted because he did not "fairly present" the claim as a federal as well as a state claim.

    2.   <u>Ineffective Assistance of Counsel Claim Does</u>
        <u>Not Appear to be Exhausted</u>

Similarly, Petitioner does not appear to have exhausted his ineffective assistance of counsel claim. Petitioner alleges that Ms. Loy rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments by failing to interview, investigate, or call certain lay and expert witnesses to discredit the State's theory that Cullen died as a

16

result of a kick from Petitioner.  Petitioner maintains

that he exhausted this claim.  Even viewing the

arguments extended in Petitioner's Opening Brief to the

ICA liberally, the Court is disinclined to find that

Petitioner fairly presented his ineffective assistance

of counsel claim as a federal claim as well as a state

claim.

Although Petitioner injected federal case law

into his argument, he articulated the following

standard of review:  "When reviewed as a whole, was the

assistance provided to the defendant within the range

of competence demanded of attorneys in criminal cases?

State v. Aplaca, 74 Haw. 54, 66-67, 837 P.2d 1298

(1992)."  (Id. at 33.)  He also cited the two-part

ineffective assistance of counsel test set forth in

Aplaca.  (Id. at 36.)  Aplaca enunciates the state

standard for measuring ineffective assistance of

counsel, and expressly distinguishes this standard from

the stricter federal standard set forth in Strickland

v. Washington, 466 U.S. 668 (1984).  Aplaca, 74 Haw. at

17

67, 837 P.2d at 1305 n.2.[3]

The Court acknowledges that Petitioner quoted a Ninth Circuit case which quoted the prejudice prong of the <u>Strickland</u> test.  However, Petitioner did not argue that but for Ms. Loy's failure to interview and call

---

[3]

We have stated that the test for measuring ineffective assistance of counsel which this court adopted in <u>Antone</u>, 62 Haw. at 348-49, 615 P.2d at 104, differs from the federal standard enunciated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). <u>See</u> <u>Smith</u>, 68 Haw. at 310 n. 7, 712 P.2d at 500 n.7 ("under the prevailing federal standard a defendant's claim of ineffective assistance is upheld only if he shows 'that counsel's representation fell below an objective standard of reasonableness' and 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (Citation omitted.)) Because the <u>Strickland</u> test has been criticized as being unduly difficult for a defendant to meet, we continue to follow the standard first enunciated in <u>Antone</u> because under Hawaii's Constitution, defendants are clearly afforded greater protection of their right to effective assistance of counsel.

<u>Aplaca</u>, 74 Haw. at 67, 837 P.2d at 1305 n.2.

18

lay and expert witnesses, the result of the trial would have been different.  Rather, Petitioner generally asserted that Ms. Loy was ineffective and concluded that her "lack of diligence and failure to investigate 'resulted in the withdrawal or substantial impairment of a potentially meritorious defense.'  Aplaca, 74 Haw. at 67."  (Id. at 40.)  This is the state, not federal, standard for assessing ineffective assistance of counsel claims.  Thus, the mere fact that Petitioner cited federal case law does not transform his state claim into a federal claim, as he never articulated a federal basis for the claim, appearing instead to rely on the less stringent state standard for ineffective assistance of counsel.

It is also unclear, after a review of the ICA Opinion, whether the ICA applied the federal or state ineffective assistance of counsel standard in determining that the circuit court did not commit a clear abuse of discretion by denying Petitioner's motion for a new trial.  Kwak, 111 Hawai'i 123, 2006 WL

19

2130906, at *1; (see also Ex. P to Answer at 2.)   In
addressing Petitioner's contention that the trial court
erred in denying his motion for new trial as it
concerned the alleged ineffective assistance of
counsel, the ICA concluded:

> Although hindsight through rose-colored
> glasses may appear to be 20/20,
> "[s]pecific actions or omissions alleged
> to be error but which had an obvious
> tactical basis for benefitting the
> defendant's case"-and that is the case
> here-"will not be subject to further
> scrutiny." State v. Uyesugi, 100 Hawai'i
> 442, 449, 60 P.3d 843, 850 (2002)
> (citation and block quote format omitted).
> In denying Defendant's motion for a new
> trial, the circuit court did not commit "a
> clear abuse of discretion." State v.
> Pauline, 100 Hawai'i 356, 365, 60 P.3d
> 306, 315 (2002) (citation and internal
> quotation marks omitted).

Kwak, 2006 WL 2130906, at *1.  Given Petitioner's
framing of the claim in his Opening Brief and the
limited discussion in the ICA Opinion, which cites only
to state law, it appears that the ICA, like this Court,
characterized the claim as a state claim.

However, because the Court cannot conclusively
determine whether the ICA assessed this claim under the

20

stricter federal standard, it will "look through" to the last reasoned decision:  the circuit court's order denying the motion for new trial.  Pham v. Terhune, 400 F.3d 740, 742 (9th Cir. 2005) (citations omitted) ("In reviewing a state court's summary denial of a habeas petition, this court must 'look through' the summary disposition to the last reasoned decision.").

The circuit court relied solely on Hawaii appellate case law, which does not require a showing of actual prejudice to prove ineffectiveness, in determining that Ms. Loy did not act ineffectively. (Ex. O to Answer at 15-16, 19.)  The court acknowledged that Petitioner had cited to recent Ninth Circuit cases, but distinguished the cases because none of the witnesses in those cases had given statements to the police which were reviewed by defense counsel prior to trial nor had the witnesses admitted to lying, as Kaae did.  (Id.)

The circuit court held extensive hearings, during which a number of witnesses testified, including

21

Ms. Loy and those individuals Petitioner asserts Ms. Loy should have called at trial. At the September 20, 2002 hearing, Mr. Pafundi directed the court's attention to Ninth Circuit authority and a passage he quoted discussed the Strickland prejudice prong. However, the crux of Mr. Pafundi's argument was that failure to investigate constitutes deficient performance, not that Ms. Loy's allegedly deficient actions actually prejudiced Petitioner. (Ex. M2 to Answer at 90-99.) The court and counsel also engaged in extensive discussions about the Strickland prejudice prong referenced in Ninth Circuit cases. (Ex. M3 to Answer at 136-49.) But ultimately, prior to orally denying the motion for new trial at the October 4, 2002 hearing, the court articulated its belief that the Hawaii standard applied to the ineffective assistance of counsel claim. (Ex. N to Answer at 3:1-11.) Mr. Pafundi agreed, stating: "Yes, your honor. Pursuant to State v. Aplaca, the Supreme Court has ruled that it is a lower standard than the standard applied in

22

Strickland." (Id. at 3:12-14.)  Thus, it was only

after careful consideration of the testimony of the

witnesses, arguments of counsel, and the Hawaii

ineffective assistance of counsel standard that the

circuit court rendered its decision.

Based on the thorough reasoning presented in

the order denying the motion for new trial and

concurrence by Mr. Pafundi that the less stringent

Hawaii ineffective assistance of counsel claim applied,

when coupled with the lack of federal authority cited

in the ICA opinion, it is not unreasonable for this

Court to find that Petitioner's ineffective assistance

of counsel claim was not exhausted at the state level.

Nevertheless, for the sake of thoroughness, the Court

will address the merits of Petitioner's claim.

B.   Timeliness of Petition

Assuming, *arguendo*, that Petitioner fairly

presented his claim as a federal as well a state claim

23

to the highest state court,[4] the Court must also assess the timeliness of the Petition.  The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a 1-year limitation on the time that a person in custody[5] can file an application for a writ of habeas corpus.  The limitation period runs from the date on which the judgment under attack becomes "final by the conclusion of direct review or the expiration of the time for seeking review."  28 U.S.C. § 2244(d)(1)(A).  Here, the Hawaii Supreme Court rejected Petitioner's application for Writ of Certiorari on November 6, 2006.  Accordingly, Petitioner timely filed his Petition.

_____

[4]   In the present case, although the Court questions whether Petitioner fairly presented his ineffective assistance of counsel claim as a federal as well as a state claim on direct appeal, it is clear that he presented his claim to the highest state court. He not only filed a motion for new trial, but presented his claims to the ICA for review.  Petitioner sought further review by the Hawaii Supreme Court, but it denied his application for Writ of Certiorari.

[5]   Petitioner is currently on parole.  However, a petitioner is in "custody" for the purposes of habeas jurisdiction while on parole.  Goldyn v. Hayes, 444 F.3d 1062, 1064 n.2 (9th Cir. 2006) (citing Jones v. Cunningham, 371 U.S. 236, 243 (1963)).

C.   Petitioner's Ineffective Assistance of Counsel
     Claim is Without Merit

     When a court issues a writ of habeas corpus, it

declares that the petitioner is being held in custody

in violation of his constitutional or other federal

rights.  28 U.S.C. § 2254(a); Harvest v. Castro, 531

F.3d 737 (9th Cir. 2008).  Thus, to obtain habeas

corpus relief, a petitioner must demonstrate that his

conviction or punishment violates the federal

constitution, a federal statute, or a treaty.  28

U.S.C. § 2241(c)(3); Bonin v. Calderon, 59 F.3d 815

(9th Cir. 1995); see also Morris v. Ylst, 447 F.3d 735

(9th Cir. 2006) (holding that the federal courts may

set aside a state conviction only if the habeas

petitioner proves that his detention violates the

fundamental liberties of the person).

     All federal habeas petitions filed after April

24, 1996, are governed by AEDPA, 28 U.S.C. § 2254.

Woodford v. Garceau, 538 U.S. 202, 204 (2003); Brown v.

Farwell, 525 F.3d 787, 792 (9th Cir. 2008).  Under

AEDPA, habeas corpus relief may not be granted on any

25

claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); <u>Williams v. Taylor</u>, 529 U.S. 362, 402-04 (2000).

A decision is contrary to federal law if the state court applies a rule of law that contradicts Supreme Court precedent, or if the state court makes a determination contrary to a Supreme Court decision on materially indistinguishable facts. <u>Brown</u>, 525 F.3d at 792. A state court unreasonably applies federal law when its application of Supreme Court precedent to the facts of petitioner's case is objectively unreasonable. <u>Id.</u> at 793 (citation omitted).

"Factual determinations by state courts are

26

presumed correct absent clear and convincing evidence

to the contrary." Cooper v. Brown, 510 F.3d 870, 919

(9th Cir. 2007) (quoting Miller-El v. Cockrell, 537

U.S. 322, 340 (2003)); see also 28 U.S.C. §

2254(e)(1)).

Clear and convincing evidence under § 2254(e)

"requires greater proof than preponderance of the

evidence" and must produce "an abiding conviction" that

the factual contentions being advanced are "highly

probable." Cooper, 510 F.3d at 919 (quoting

Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir.

2004)). The presumption of correctness applies not

only to express findings of fact, but also applies

equally to unarticulated findings that are necessary to

the state court's conclusions of mixed questions of

fact and law. Cooper, 510 F.3d at 919 (citing Marshall

v. Lonberger, 459 U.S. 422, 433 (1983) (holding it

proper to apply this presumption to a credibility

determination which was implicit in the rejection of a

defendant's claim)). Where there are two permissible

27

views of the evidence, a fact finder's choice between them cannot be clearly erroneous.  <u>Cooper</u>, 510 F.3d at 919 (citing <u>Amadeo v. Zant</u>, 486 U.S. 214, 226 (1988)).

Petitioner argues that the ICA decision was contrary to federal law because it failed to apply the correct controlling authority from the Supreme Court. (Pet'r's Mem. in Supp. of Habeas Corpus Pet. at 30-31.) Respecting the merits of his claim, Petitioner avers that he was prejudiced by Ms. Loy's failure to interview and call as witnesses Kaae and Lee and her failure to conduct an expert investigation.  Petitioner posits that but for Ms. Loy's deficient performance, there is a reasonable probability that the jury would have had reasonable doubt concerning his guilt.  (<u>Id.</u> at 35-36.)

Respondent challenges that Ms. Loy's actions fell within the objective standard of reasonableness required of a criminal defense attorney under <u>Strickland</u>.  He also counters that "there is no reason to conclude the [elbow strike] theory was so clearly

more persuasive than the defense he put forth at trial
that there is a 'reasonable probability' that, but for
the decision not to rely upon the 'alternative theory'
the result of his trial would have been different."
(Resp't's Answer to Pet. for Writ of Habeas Corpus at
26.)

　　　　As an initial matter, the Court notes that
Petitioner erroneously argues that he is entitled to
relief due to the ICA's failure to apply controlling
Supreme Court authority.  The applicable standard is
not whether the ICA failed to apply federal law, but
whether the law it applied contradicts Supreme Court
precedent or the decision is contrary to a Supreme
Court decision.  There can be no improper or
unreasonable application of Supreme Court precedent
where, as here, the ICA did not apply the same, and the
Hawaii standard is less stringent than the standard set
forth in Strickland.  The Court must instead evaluate
whether the ICA's decision was based on an unreasonable
determination of the facts in light of the evidence

presented in the state court proceeding.

        "To prevail on a claim of ineffective
assistance, a petitioner must show that: (1) his trial
counsel's performance 'fell below an objective standard
of reasonableness'; and (2) 'there is a reasonable
probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been
different.'"  Duncan v. Ornoski, 528 F.3d 1222, 1233-34
(9th Cir. 2008) (quoting Strickland, 466 U.S. at 688,
694).

    1.  Ms. Loy's Performance Did Not Fall Below an
        Objective Standard of Reasonableness

        There exists a presumption that Ms. Loy was
competent in her representation of Petitioner.
Strickland, 466 U.S. at 689-90 ("[A] court must indulge
a strong presumption that counsel's conduct falls
within the wide range of reasonable professional
assistance" and that "counsel is presumed to have
rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional
judgment.").  To rebut this presumption, Petitioner

must show that Ms. Loy's "performance was objectively unreasonable under prevailing professional norms and was not the product of sound strategy." Duncan, 528 F.3d at 1234.  The Court's "scrutiny of counsel's performance must be highly deferential" and "must evaluate counsel's conduct from his perspective at the time, without the benefit of hindsight." Id. (quoting Strickland, 466 U.S. at 689) (quotations omitted).

The Strickland Court offered the following instruction for determining an actual ineffective assistance of counsel claim.  First, a "convicted defendant . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690.  Second, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct"

31

emphasizing instead that "reasonableness under prevailing professional norms" is the proper measure of attorney performance.  <u>Summerlin v. Schriro</u>, 427 F.3d 623, 629 (9th Cir. 2005) (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003)) (citation omitted).  However, general principles have emerged from Ninth Circuit precedent concerning the assessment of attorney performance with respect to the duty to investigate. <u>Id.</u> (citing the ABA Standards for Criminal Justice applicable to counsel's duty to investigate); <u>see also</u> <u>Duncan</u>, 528 F.3d at 1234.  It is well-established in the Ninth Circuit that "[a] lawyer who fails adequately to investigate and introduce . . . [evidence] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance."  <u>Id.</u> (alterations in original) (citations omitted).

In the present case, Petitioner points to Ms. Loy's failure to interview and produce at trial Kaae,

32

Lee, and expert witnesses who would have either demonstrated innocence or raised sufficient doubt so as to undermine confidence in the verdict, as deficient. The Court is not persuaded that the acts and/or omissions complained of fell below a standard of objective reasonableness.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary . . . a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.  Employing this and the aforementioned standards, the Court finds that Ms. Loy's decision not to interview or call Kaae, Lee, and expert witnesses at trial to support the "elbow strike" theory was objectively reasonable, and that the ICA decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

a.   <u>Mahealani Kaae</u>

Ms. Loy elected not to interview Kaae or present her as a witness at trial because of the inconsistent and admittedly false statements she made to the police when interviewed.  At the hearing on the motion for new trial, Ms. Loy testified as follows concerning her decision not to call Kaae:  "She had basically given a statement with motive to help Mr. Cullen.  I knew there was a risk that she still would try to help Mr. Cullen. . . . Secondly, made a statement of what she saw but like everyone else did not see everything."  (Ex. M1 to Answer at 16:4-8.) Responding to further questioning about a lawyer's duty to investigate what information a potential eye witness possessed, Ms. Loy stated:

> A.   I am aware of my duties to investigate.  It's my duty to investigate includes sworn statements taken by the police officers and given to me in discovery.  That's my starting point for most witnesses because they get to them first.  And from [Kaae's] two contradictory sworn statements I didn't see that she would ever be a credible witness for us.

The State would have eaten her alive.

Q.   Or she could have helped acquit the defense if you put her on the stand?

A.   No.  If I put her on the stand that might have been a nice type of red herring kind of issue but then Mr. Kemp had grounds to totally undermine her testimony based upon her prior lie to the police officers.  The fact she made two statements that, that the question would be which one you believe.  To convince the jury to believe the elbow one which came second did not seem to help Tony's defense.  It seemed to be a side issue that was a red herring and I thought a common sense reasonable jury would have recognized this.

Q.   You discounted any possibility that the jury would understand completely the motive for her giving her first statement and decided to tell the truth in her opinion as to what actually happened.  Could have been a powerful witness for the defense. Don't you agree?

A.   No, I don't think so.

Q.   You made that determination without ever having interviewed her?

A.   I made a determination without individually interviewing her based on two statements I had from the state and from the testimony of all other witnesses I talked to.  I was getting

> no support for that theory so I would
> have been presenting her in isolation
> and it would not have been effective
> for the jury.

(Id. at 17:6-25; 18:1-13.)

Petitioner takes issue with Ms. Loy's
determination that the jury would not perceive Kaae to
be a credible witness without interviewing Kaae.  He
speculates that Kaae would have explained to the jury
that she exaggerated when first interviewed by police
but that her exaggeration could not have harmed his
case because Kaae never implicated him as responsible
for Cullen's death.  According to Petitioner, Kaae is
the sole witness who could have contradicted the
testimony of Anthony Torres, the one eyewitness
produced by the State, who testified that he saw
Petitioner deliver a kick that caused Cullen's death.
The Court is not convinced.

As properly determined by both the circuit
court and ICA, Ms. Loy did not act ineffectively by
failing to interview or call Kaae as a witness at
trial.  After reviewing Kaae's inconsistent police

36

statements and her admission that she lied during her
first interview, it was not unreasonable for Ms. Loy to
decline to interview her or present her at trial.
Applying a heavy measure of deference to Ms. Loy's
strategic decision, the Court finds that she reasonably
decided that Kaae would be a non-credible witness based
on Kaae's lie to the police and based on other
witnesses' testimony which would have made any further
investigation unnecessary.  Strickland, 466 U.S. at
691.  The Ninth Circuit has "found counsel to be
ineffective where he neither conducted a reasonable
investigation nor made a showing of strategic reasons
for failing to do so."  Avila v. Galaza, 297 F.3d 911,
918-19 (9th Cir. 2002) (quoting Sanders v. Ratelle, 21
F.3d 1446, 1456 (9th Cir. 1994)) (quotations omitted).
As part of his duty, a lawyer must "investigate what
information . . . potential eye witnesses possess[],
even if he later decide[s] not to put them on the
stand."  Id. (quoting Sanders, 21 F.3d at 1457)
(alterations in original).

37

Here, Ms. Loy's failure to interview Kaae does not mean that she did not conduct a reasonable investigation.  Lord v. Wood, 184 F.3d 1083, 1095 n.8 (9th Cir. 1999) ("Counsel is not obligated to interview every witness personally in order to be adjudged to have performed effectively.").  She investigated Kaae as a potential witness by reviewing her sworn statements to police.  The Court acknowledges that a lawyer's decision not to put someone on the stand is entitled to less deference than if he had interviewed the witness.  Id.  However, where, as here, Kaae's two police statements were contradictory and she admitted to lying in the first statement, her questionable credibility was apparent to Ms. Loy even without an interview.[6]  Kaae's lack of credibility based on her untruthful sworn statement to the police, when taken together with other witness testimony and the realm of plausible defenses to be presented at trial, guided Ms.

_____

[6] The circuit court negatively assessed Kaae's credibility after she testified at the hearing on the motion for new trial.

38

Loy's determination to not interview Kaae or call her as a witness.  These are strategic reasons, influenced by Ms. Loy's 25+ years of trial experience, for declining to interview or call Kaae as a witness.  In contrast to the cases finding counsel to be ineffective, Ms. Loy was aware of the information Kaae possessed by way of the transcripts documenting her statements to police (including the initial sworn statement that turned out to be a lie) and therefore had the requisite facts upon which to base her strategic decision.[7]  "[S]trategic choices made after

---

[7]  The following Ninth Circuit cases found counsel to be deficient for failing to interview and/or call a witness at trial, but none of the cases involved the review by counsel and client of sworn statements made to the police which contradicted one another and contained an admission by the witness that he/she lied: Riley v. Payne, 352 F.3d 1313, 1324-25 (9th Cir. 2003) (counsel did not make an informed tactical decision because defense counsel did not contact potential witness who was present with the defendant during the incident and who could have corroborated and made more acceptable a tale of self-defense); Avila, 297 F.3d at 919-21 (finding counsel's performance deficient because he failed to investigate or introduce at trial evidence of the most important defense: that the defendant's brother was the shooter); Sanders, 21 F.3d at 1456-57 (holding that counsel's refusal to investigate defense

thorough investigation of law and facts relevant to
plausible options are virtually unchangeable." See
Duncan, 528 F.3d at 1234 (alteration in original).

In arriving at its conclusion that Ms. Loy did
not act deficiently as to Kaae, the Court also
considers Ms. Loy's communications with Petitioner
regarding witnesses and trial strategy.  Inquiries
"into counsel's conversations with the defendant may be
critical to proper assessment of counsel's
investigative decisions, just as it may be critical to
a proper assessment of counsel's other litigation
decisions." Strickland, 466 U.S. at 691.  Although Ms.
Loy acknowledged that she made the ultimate decision

---

that the defendant's brother was the shooter even after
the brother had confessed on a number of occasions was
not "strategic", especially considering that the
brother went to counsel's office and counsel would not
speak to him and counsel ordered the brother to leave
when he appeared at the trial); Lord, 184 F.3d at 1095-
96 (holding that counsel was deficient for failing to
develop information that could have undermined the
prosecutor's case; counsel had decided to exclude three
witness based on a misimpression that the police and
investigators who spoke to the witnesses did not find
them credible).

about who to present to the jury and who not to
present, she testified that she consulted Petitioner
about the various witnesses, their statements, and
their value in bolstering or negatively affecting his
case.  (Ex. M2 to Answer at 77-79.)  She represented
that Petitioner did not raise any strenuous objections
to not calling Kaae and other witnesses such as Lee.
(Id. at 79:4-9.)  Ms. Loy's consultation with
Petitioner lends further support to the conclusion that
she made a sound strategic decision as to Kaae.

    b.  Jason Lee

        Petitioner argues that Ms. Loy should have
called Lee at trial because his testimony would have
corroborated Kaae's version of the events.  Ms. Loy
declined to interview or call Lee at trial because:

> A.  What I gathered from his statement was
> not going to be supportive of our
> defense.  I couldn't just throw every
> witness out there at the jury and
> expect them to have any faith even in
> what Tony said.
>
> Q.  You understand that Jason Lee did not
> know Tony Kwak very well.  He had the
> same thing with Lindy Nagata and

41

> Ingrid Tamayose and Mahealani Kaae.
> They had no friendship with Tony Kwak
> unlike the witnesses that you called
> in defense of Tony Kwak.  Isn't that
> right?
>
> A.   Right.
>
> Q.   These are more neutral witnesses, all
>      of them?
>
> A.   No.  They were actually witnesses in
>      favor of Mr. Cullen.  That's why
>      Mahealani Kaae made the statement that
>      she saw someone.  That she saw the
>      kick because she wanted to help Robert
>      Cullen.

(Ex. M1 to Answer at 21:4-19.)  She further testified

that:

> My assessment of his testimony was that
> although he claims he saw Bobby [Cullen]
> holding somebody he didn't really see what
> made Bobby fall and didn't have anything.
> There were a lot of people in his position
> that didn't really see what happened but
> were on, everyone of it I didn't see that
> he had anything to add.

(Ex. M2 to Answer at 64:12-17.)

     At the hearing on the motion for new trial, Lee

testified that he saw Cullen restraining an individual

who was trying to break loose by wiggling his arms

(Ex. L2 to Answer at 100-01.)  Lee apparently turned

42

his attention away from Cullen for approximately one

minute, but did not see what happened to Cullen.  (<u>Id.</u>

at 104.)  When questioned about whether he was

surprised he was not called at trial, Lee responded:

"No, I wasn't surprised.  Because, I mean, I didn't see

what happened to Bobby, you know, and I figure that's

basically, you know, what trial is for.  I mean, I

didn't see him get kicked, I didn't see him do

anything.  I turned - I saw Bobby restraining somebody,

I had my attention towards the fight, and when I looked

back, Bobby was on the ground."  (<u>Id.</u> at 106:5-11.)

This Court finds, as did the trial court and

ICA, that Ms. Loy did not render ineffective assistance

of counsel by failing to interview and call Lee as a

witness.  First and most importantly, he did not

observe what happened to Cullen.  Second, Ms. Loy

determined, after reviewing Lee's statement to the

police, that his testimony would not be supportive of

the defense presented and would be cumulative.  As

such, and for the reasons discussed with respect to

43

Kaae, Ms. Loy made a strategic decision that was reasonable under all the circumstances at the time.

c.   Expert Witness(es)

Petitioner's final point of error is that Ms. Loy performed deficiently by failing to procure and present an expert to support the "elbow strike" theory.[8] Mr. Pafundi elicited the following testimony from Ms. Loy at the hearing on the motion for new trial:

> Q.   Did you ever, or your office ever considered hiring an expert such as a martial arts instructor or expert to testify that an elbow could fracture somebody's sternum?
>
> A.   No, because we don't shop for experts for a theory that might or might not exist out in the world out there.  We just don't do that.
>
> Q.   You discounted completely the fact that an elbow could have caused the death of Robert Cullen.  Therefore, did absolutely nothing to pursue that theory before trial or during trial?
>
> A.   At trial I remember asking the medical examiner about the force necessary to cause commotio cordis  However, I

_____

[8]   A martial arts expert, Mr. Rodrigues, testified at trial.

could not get anything from her that
would support an elbow fracturing a
sternum.

Q.   Isn't it true you never asked her at
trial whether or not an elbow can
fracture a sternum?

A.   I don't recall.  I just know she was
going to say no, and I didn't want to
get into that.  I think not.  I think
you are right.  She already told me in
her interview that an elbow could not
fracture a sternum.  We discussed the
theory.  She basically said a punch or
a kick.  When she got on the stand,
she insisted it was a kick.  Either
way this had to be more than an elbow.
That was her conclusion.

(Ex. M1 to Answer at 18:14-25; 19:1-13.)

A.   We don't shop for experts that we can
pay to take a position that we want
taken.  That's civil lawyers' work.
We don't do that.  We look for experts
to support any defense that we think
exists with our client.  I don't think
that existed.

Q.   So you didn't think it was a
worthwhile expenditure of funds to
hire an expert to testify an elbow
could fracture a sternum?

A.   No, I don't know of any expert that
could say that.

Q.   You didn't look for one?

45

A.   No, I didn't because I don't have a
     reason to believe the medical examiner
     was wrong.

Q.   You didn't even consider the elbow
     fractured this gentleman's sternum?

A.   I did.  That's why I interviewed the
     medical examiner.

Q.   That was it.  That was the extent of
     your investigation?

A.   That and my own experience with jury
     trial work which I have done for 30
     years, 25 years, that in fact jurors
     don't buy things that don't make
     common sense and you can't backup.
     You can shop for an expert to say
     something but they won't be accepted
     if it doesn't ring true.

(Id. at 22:14-25; 23:1-13.)

As with Ms. Loy's decision not to pursue

certain witnesses, her strategic decision not to retain

an expert to support the "elbow strike" theory, which

was neither born out by the evidence nor the testimony

of interviewed witnesses, was objectively reasonable.

"Although it may not be necessary in every instance to

consult with or present the testimony of an expert,

when the prosecutor's expert witness testifies about

46

pivotal evidence or directly contradicts the defense theory, defense counsel's failure to present expert testimony on that matter may constitute deficient performance." <u>Duncan</u>, 528 F.3d at 1235 (citations omitted).  By concluding that Ms. Loy's decision had an obvious tactical basis for benefitting Petitioner's case and that the evidence did not support the retention of an expert to promote the "elbow strike" defense, the ICA and circuit court did not make an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  As already discussed, Ms. Loy's investigation was not deficient and her decisions were strategic and intended to benefit Petitioner.  <u>Turner v. Calderon</u>, 281 F.3d 851, 876 (9th Cir. 2002) ("The choice of what type of expert to use is one of trial strategy and deserves 'a heavy measure of deference.'").  The mere fact that Ms. Loy and current counsel might have presented a different defense does not render deficient Ms. Loy's performance.  <u>See</u> <u>id.</u> (declining to deem counsel

47

"ineffective because, with the benefit of hindsight,
[it is] determine[d] that other trial strategies or
expert witnesses may have been a better choice");
Strickland, 466 U.S. at 689 ("There are countless ways
to provide effective assistance in any case.  Even the
best criminal defense attorneys would not defend a
particular client in the same way.").  For these
reasons, the Court finds that Ms. Loy's performance was
neither deficient nor objectively unreasonable.

In light of the determination that Ms. Loy
acted reasonably, the Court finds it unnecessary to
address Strickland's prejudice prong, as the Court did
not identify any unprofessional errors that would have
affected the result of Petitioner's trial.

CONCLUSION

Based on the foregoing, the Court HEREBY FINDS
and RECOMMENDS that Petitioner's Habeas Corpus Petition
Under 28 U.S.C. § 2254, filed October 24, 2007, be
DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED:   Honolulu, Hawaii, October 22, 2008.



_____
Kevin S.C. Chang
United States Magistrate Judge

KWAK V. FRANK, CV 07-00534 SOM-KSC; FINDINGS AND RECOMMENDATION TO DENY PETITIONER'S HABEAS CORPUS PETITION